UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION

CHRISTOPHER JOHN MIX,                    )
                                         )
        Plaintiff,                       )      Civil Action No. 5:22-CV-067-CHB-LLK
                                         )
v.                                       )
                                         )
ERIC WEST, *et al.*,                     )          **MEMORANDUM OPINION**
                                         )              **AND ORDER**
        Defendants.                      )

                    ***   ***   ***   ***

        This matter is before the Court on Defendants Eric West and the Kentucky State Police's

Motions to Dismiss [R. 7; R. 9].  Plaintiff Christopher John Mix filed a Response [R. 12], and the

Defendants filed a Reply [R. 13].  This matter is ripe for review.  For the reasons that follow, the

Court will grant the Defendants' official capacity motion [R. 7] and will grant in part and deny in

part West's individual capacity motion [R. 9].

## I.      BACKGROUND

        Plaintiff is a resident of Mayfield, Graves County, Kentucky.  [R. 4, p. 1].  According to

his Amended Complaint, on the evening of February 23, 2022, Plaintiff and his wife went to

Rockers Bar & Grill in Boaz, Kentucky, for a pool tournament.  [*Id.* at 2].  When they arrived, the

facility's management told them the tournament was canceled because of an approaching ice

storm.  [*Id.*].  Plaintiff shot a few rounds of pool, then he and his wife left to return home.  [*Id.*].

        They traveled to Mayfield via Highway 45, and they drove much slower than the posted

speed limit because it was starting to sleet.  [*Id.*].  As they entered Graves County, Plaintiff's wife

ordered a pizza, so Plaintiff drove straight toward Mayfield instead of turning at the Bypass. [*Id.*].

Just after the Bypass, Plaintiff saw police lights in his rearview mirror and immediately pulled

over for a traffic stop.  [*Id.* at 3].  Defendant West, a trooper with the Kentucky State Police, approached Plaintiff's truck and asked Plaintiff if he knew why he was being pulled over, and Plaintiff stated that he did not.  [*Id.* at 1, 3].  West told Plaintiff that he was pulled over because Plaintiff's license plate was not illuminated, and Plaintiff responded by saying something like, "that's pretty crappy to pull someone over for that on a night like this."  [*Id.* at 3].

West's attitude became more aggressive, and he told Plaintiff, "I wasn't going to write you a ticket, but, since you think it's so crappy, you're getting a ticket."  [*Id.*].  West asked for Plaintiff's insurance card, and Plaintiff admitted that, although he had insurance, he did not have his insurance card with him.  [*Id.*].  While West worked on the ticket for approximately fifteen minutes in his police cruiser, Plaintiff and his wife's pizza was getting cold.  [*Id.*].  When West returned to Plaintiff's vehicle, he began reading the ticket.  [*Id.*].  However, Plaintiff was "eager to get his pizza," so he told West that he could read the ticket on his own and asked for the ticket.  [*Id.*].

West insisted on reading the ticket to Plaintiff and concluded by stating that Plaintiff would have to appear in court March 9, 2022.  [*Id.*].  Plaintiff commented that he would not go to court for this ticket because a citation for non-illuminated lights and failure to have proof of insurance should be prepayable and because the Graves County courts were at the time operating virtually because of a recent tornado.  [*Id.*].  West heard Plaintiff's comment and told him that a warrant would be issued for his arrest if he did not appear in court, and Plaintiff responded that West should do whatever he needed to do.  [*Id.* at 4].

West then told Plaintiff to get out of his vehicle and that he was being arrested because West had "suspicion" Plaintiff would not show up for court.  [*Id.*].  West patted Plaintiff down and discovered Plaintiff was wearing a holster for a pistol, but that he did not have a pistol on him.[1]

---

[1] Plaintiff has a concealed carry permit.  [*See* R. 4, p. 4].

[*Id.*].  Plaintiff has a concealed carry permit.  [*Id.*].  Then, West placed Plaintiff in his police cruiser, completing Plaintiff's arrest.  [*Id.*].  After placing Plaintiff in the police cruiser, West returned to Plaintiff's truck, spoke to Plaintiff's wife, and removed Plaintiff's pistol from the truck.  [*Id.*].  West took the pistol to his cruiser and told Plaintiff he was going to check to see if it was stolen.  [*Id.*].  The pistol came back clear.  [*Id.*].

Next, West told Plaintiff he was going to do a full search of Plaintiff's truck.  [*Id.*].  Plaintiff did not consent to the search, and "West ordered Mr. Mix's wife to stand outside the truck in below-freezing weather and sleet so he could root through Mr. Mix's truck in search of nothing in particular but something he could add on to Mr. Mix's charges."  [*Id.*].  After he searched Plaintiff's truck, West took Plaintiff to the Graves County jail, where Plaintiff was booked on charges of failure to have proof of insurance, having a non-illuminated license plate, and Obstructing Governmental Operations.  [*Id.* at 5].  Plaintiff was then transferred to the McCracken County Detention Center before being released on his own recognizance.  [*Id.*].

After being released from custody, Plaintiff replaced the light bulb illuminating the license plate on his truck and obtained his insurance card for the vehicle, and he was then permitted to prepay the citation for those offenses.  [*Id.*].  Additionally, the prosecutor dismissed the Obstructing Governmental Operations charge on his own motion.  [*Id.*].

On May 25, 2022, Plaintiff filed his initial Complaint in this Court.  [R. 1].  Less than a week later, on May 31, 2022, he filed an Amended Complaint.  [R. 4]; *see* Fed. R. Civ. P. 15(a)(1). In his Amended Complaint, Plaintiff names West and the Kentucky State Police as defendants and describes his case as "a civil action arising under the laws of the United States brought for violations of the First and Fourth Amendments to the United States Constitution via 42 U.S.C. § 1983."  [R. 4, p. 1].  He specifically pleads the following claims: false arrest against West

individually and in his official capacity (Count I); illegal search and seizure against West individually and in his official capacity (Count II); malicious prosecution against West individually and in his official capacity (Count III); retaliation in violation of the First Amendment against West individually and in his official capacity (Count IV); and deliberate indifference to failing to train/or supervise West against the Kentucky State Police (Count V).  [*See id.* at 1-11].

The Defendants filed two Motions to Dismiss.  In the first, West and the Kentucky State Police move the Court to dismiss Plaintiff's official capacity claims based on Federal Rule of Civil Procedure 12(b)(1) and (b)(6).  [*See* R. 7].  In the second, West moves the Court to dismiss Plaintiff's individual capacity claims based on Rule 12(b)(6).  [*See* R. 9].  These motions have been fully briefed [R. 12; R. 13] and are ripe for review.

As a preliminary matter, Plaintiff has conceded his official capacity claims.  [*See* R. 12, p. 2 n.1 ("Mr. Mix's official capacity claims should be dismissed.").  Thus, the Defendants' Motion to Dismiss Official Capacity Claims [R. 7] will be granted, and the Court will proceed to address only Plaintiff's claims against West in his individual capacity.

## II.    LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Further, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do.  Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement."  *Iqbal*, 556 U.S. at 678 (cleaned up).

Simply stated, when ruling on a motion under Rule 12(b)(6), the Court "must (1) view the complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual allegations as true." *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (per curiam).  And, it "may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *See Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008).

## III.   ANALYSIS

Plaintiff's remaining claims are against West in his individual capacity for false arrest, malicious prosecution, illegal search and seizure, and retaliation in violation of the First Amendment.  [*See* R. 4, pp. 6-9].  West does not raise qualified immunity in the briefing, so the Court will review these claims on the merits.

### A.  Fourth Amendment Claims

Three of Plaintiff's claims—false arrest, malicious prosecution, and illegal search and seizure—are based on the Fourth Amendment.  *See, e.g.*, *Weser v. Goodson*, 965 F.3d 507, 513 (6th Cir. 2020) ("This court has recognized that claims for false arrest and malicious prosecution are both constitutionally cognizable and both arise under the Fourth Amendment."); *Herring v. United States*, 555 U.S. 135, 136 (2009) ("The Fourth Amendment forbids unreasonable searches and seizures[.]" (internal quotation marks omitted)).  The Fourth Amendment states in full:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV.

### 1. False Arrest and Malicious Prosecution Claims

Plaintiff's false arrest and malicious prosecution claims are intertwined. Under federal law, a false arrest claim "requires a plaintiff to prove that the arresting officer lacked probable cause to arrest the plaintiff." *Weser*, 965 F.3d at 513. "Similarly, one of the elements of a federal malicious-prosecution claim—and the most relevant one here—is that a plaintiff must show that the officers helped start a prosecution against him without probable cause."[2] *Id.* (internal quotation marks omitted). Thus, both of these claims "hinge on an alleged unreasonable seizure. And they both rise and fall on whether there was probable cause supporting the detention." *Howse v. Hodous*, 953 F.3d 402, 409 (6th Cir. 2020).

"Probable cause exists when there are enough facts and circumstances to make a reasonable person believe that the accused was guilty of the crime charged." *Id.* at 408 (internal quotation marks omitted). Importantly, "[i]f the facts known to the officers support probable cause in any form, then an individual may lawfully be arrested." *Id.* at 409. This means that "[w]hat matters is the validity of the *arrest* (the seizure) and not the validity of every *charge* (the potential justifications for the seizure)." *Id.* "As long as the arrest is supported by probable cause on one charge, then a false arrest claim cannot move forward." *Id.*

According to the Amended Complaint, Plaintiff was first cited for not having his license plate illuminated and for not having his insurance card in his possession. [*See* R. 4, p. 3]. According to exhibits attached to the Defendants' briefing, these charges fall under KRS 186.170 ("Rear License Not Illuminated") and KRS 304.39-117 ("Failure to Produce Insurance Card"). [*See* R. 9-2, p. 1]. Then, after West heard Plaintiff say that he would not go to court for the traffic

---

[2] In addition to the lack of probable cause, to succeed on a malicious prosecution claim, Plaintiff must also show that he participated in the prosecution, that he suffered a deprivation of liberty, and that the criminal proceeding was resolved in his favor. *See Sykes v. Anderson*, 625 F.3d 294, 308-09 (6th Cir. 2010).

violations, West arrested Plaintiff for a violation of KRS 519.020 ("Obstructing Governmental Operations"). [*See* R. 4, p. 4; R. 9-1, p. 1].

In his Motion to Dismiss, West pivots and no longer relies on the obstructing governmental operations statute as supporting his arrest of Plaintiff. Instead, he now relies on KRS 431.015 as a grounds for which he could have arrested the Plaintiff. [*See* R. 9, p. 6 ("In consideration of these circumstances, Tpr. West had probable cause to effectuate an arrest pursuant to KRS 431.015 'Citation for misdemeanor; failure to appear.'")].

A key issue, then, is whether West had probable cause to suspect Plaintiff of criminality. *Gover v. Muravchick*, No. 5:17-CV-272-REW, 2018 WL 4518580, at *4 (E.D. Ky. Sept. 20, 2018) ("Viewing the facts in the light most favorable to Plaintiff, Defendants had—and reasonably could have believed that they had—probable cause to arrest Gover based on, at a minimum, the expired registration plate."). From the face of the Amended Complaint, Plaintiff does not dispute that West had probable cause to stop him for the traffic offenses, including failure to have his rear plate illuminated and failure to have an insurance card in his possession. Indeed, Plaintiff ultimately cured those deficiencies and paid the fine. [*See* R. 4, p. 5 ("Mr. Mix replaced the light bulb that illuminates the license plate on his truck and obtained his insurance card for the vehicle, at which point he was permitted to prepay the citation for those offenses, as he had maintained would be permitted in the very beginning.")]. Because probable cause was present for the traffic violations, Plaintiff's false arrest and malicious prosecution claims fail as a matter of law.

Here, KRS 186.170(1), "particularly regulates vehicle registration plates"—including, relevant here, the requirement that a driver have his rear plate illuminated—and a charge under that statute is considered criminal activity under Kentucky law. *See Gover*, 2018 WL 4518580, *5 (citing *Piercy v. Commonwealth*, 303 S.W.3d 492, 496-97 (Ky. Ct. App. 2010); *Bennett v.*

*Commonwealth*, No. 2009-CA-349-MR, 2010 WL 3604096, at *2-4 (Ky. Ct. App. Sept. 17, 2010)); *Piercy*, 303 S.W.3d at 496 ("Thus, it was reasonable for the officers to conclude that criminal activity was occurring under KRS 186.170(1)."). Notably, KRS 186.170(1) is classified as a "violation" under Kentucky law. *See* KRS 186.990(1); *see also Gover*, 2018 WL 4518580, at *5. And it is true that "Kentucky chooses to preclude arrests for alleged 'violations.'" *Gover*, 2018 WL 4518580, at *5.

However, Plaintiff's false arrest and malicious prosecution claims are brought under § 1983 for a violation of *federal* law not Kentucky law. *See Virginia v. Moore*, 553 U.S. 164, 173 (2008) ("[O]ur more recent decisions . . . have indicated that when States go above the Fourth Amendment minimum, the Constitution's protections concerning search and seizure remain the same."). Although Kentucky law does not permit arrests for violations, the Fourth Amendment "permits arrest for even a very minor offense." *Gover*, 2018 WL 4518580, at *5 (internal quotation marks omitted). "Plainly stated: 'If an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender.'" *Id.* (quoting *Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001)).

This means that the Fourth Amendment "does not 'forbid[ ] a warrantless arrest for a minor criminal offense,' even those 'punishable only by a fine,' such as the Kentucky violation at issue here." *Id.* at *5 (citing *Atwater*, 532 U.S. at 323; *Moore*, 553 U.S. at 167; *Reid v. Henry Cnty.*, 568 F. App'x 745, 748-49 (11th Cir. 2014)). Because West could (under federal law) arrest Plaintiff for one of the traffic charges, Plaintiff fails to state a claim under § 1983 for false arrest or malicious prosecution. *See id.* at *6 ("Armed with probable cause of a criminal offense— however minor—Defendants validly (under the Fourth Amendment) arrested Gover." (internal

footnote omitted)); *see also Atwater*, 532 U.S. at 335 ("The arrest and booking were inconvenient and embarrassing to Atwater, but not so extraordinary as to violate the Fourth Amendment."); *see also Moore*, 553 U.S. at 174 ("A State is free to prefer one search-and-seizure policy among the range of constitutionally permissible options, but its choice of a more restrictive option does not render the less restrictive ones unreasonable, and hence unconstitutional.").

### 2. Illegal Search and Seizure Claim

Next, turning to Plaintiff's illegal search and seizure claim, Plaintiff argues that West's retrieval of his gun and the subsequent search of his truck violated his Fourth Amendment rights. [*See* R. 12, p. 15; *see also* R. 4, p. 7]. In his Motion to Dismiss, West argues that "the search to locate and secure the Plaintiff's firearm was a lawful protective search in interest of officer safety." [R. 9, p. 10].

West's searches for Plaintiff's gun and of the truck were performed without a warrant. Thus, the Court begins "with the basic rule that searches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions." *Arizona v. Gant*, 556 U.S. 332, 338 (2009) (internal quotation marks omitted). "Among the exceptions to the warrant requirement is a search incident to a lawful arrest," and this "exception derives from interests in officer safety and evidence preservation that are typically implicated in arrest situations." *Id.*

Relevant here, Fourth Amendment case law delineates what is permissible in the context of a search incident to the arrest of an individual with an automobile. Under *Gant*, "[p]olice may search a vehicle incident to a recent occupant's arrest only if the arrestee is within reaching distance of the passenger compartment at the time of the search or it is reasonable to believe the vehicle

contains evidence of the offense of arrest." *Id.* at 351.  "When these justifications are absent, a search of an arrestee's vehicle will be unreasonable unless police obtain a warrant or show that another exception to the warrant requirement applies." *Id.*  For instance,  an officer may "search a vehicle's passenger compartment when he has reasonable suspicion that an individual, whether or not the arrestee, is 'dangerous' and might access the vehicle to 'gain immediate control of weapons.'" *Id.* at 346-47 (quoting *Michigan v. Long*, 463 U.S. 1032, 1049 (1983)).

According to Plaintiff's Amended Complaint, West ordered Plaintiff out of his truck and patted him down after Plaintiff said he would not show up to Court.  [*See* R. 4, p. 4].  In patting Plaintiff down, West discovered that Plaintiff had a holster for a pistol, but did not have the pistol on him.  [*Id.*].  West then placed Plaintiff in West's police cruiser, before he returned to Plaintiff's truck, spoke to Plaintiff's wife, and removed the pistol from where it had been secured under Plaintiff's seat.  [*Id.*].  West then returned to his cruiser with the pistol and told Plaintiff he was going to check to see if it was stolen; the pistol came back clear, but West said he was still going to perform a full search of Plaintiff's truck.  [*Id.*].  Plaintiff did not consent to the search, and West ordered Plaintiff's wife "to stand outside the truck in below-freezing weather and sleet" while he went through Plaintiff's truck.  [*Id.*].

With these allegations, Plaintiff has provided sufficient factual material to state a claim for an illegal search and seizure under the Fourth Amendment.  Indeed, the facts as alleged suggest that Plaintiff was in the back of West's police cruiser when West returned (twice) to search the truck and that it would have been unreasonable for West to believe the vehicle contained evidence of the offense of arrest (which was a governmental obstruction charge).  *See Gant*, 556 U.S. at 351.  It is true that Plaintiff's wife was in the truck, but on this record, nothing suggests that she

posed a risk to West, especially after she complied to stand outside the vehicle when West performed a full search.  Thus, on this claim, the Court will deny West's Motion to Dismiss.

### B.  First Amendment Claim

Finally, Plaintiff asserts a claim for retaliation in violation of the First Amendment.  [*See* R. 4, pp. 8-9].  In support of this claim, Plaintiff maintains that he "had a well-established First Amendment right to question or criticize a police officer in a peaceful, non-threatening manner." [*See id.* at 9].  Specifically, he asserts that his "statement that it was 'pretty crappy' of Defendant West to pull him over for minor offenses in inclement and deteriorating weather was protected speech constituting legitimate criticism of a government officer" and was the reason he was cited, and that West arrested him for saying that he would not attend Court.  [*See id.*].

The First Amendment states: "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the government for a redress of grievances."  U.S. Const. amend. I.  Importantly, "[o]fficial reprisal for protected speech offends the Constitution because it threatens to inhibit exercise of the protected right."  *See Hartman v. Moore*, 547 U.S. 250, 256 (2006) (cleaned up).

Therefore, as "a general matter the First Amendment prohibits government officials from subjecting an individual to retaliatory actions' for engaging in protected speech."  *See Nieves v. Bartlett*, 139 S. Ct. 1715, 1722 (2019) (internal quotation marks omitted).  "If an official takes adverse action against someone based on that forbidden motive, and non-retaliatory grounds are in fact insufficient to provoke the adverse consequences, the injured person may generally seek relief by bringing a First Amendment claim."  *Id.* at 1722 (internal quotation marks omitted).

To allege a retaliation claim, Plaintiff must show that: (1) he engaged in a constitutionally protected activity, (2) West's adverse actions caused Plaintiff to suffer an injury that would likely chill a person of ordinary firmness from continuing that activity, and (3) West was motivated, at least in part, by Plaintiff's exercise of his constitutional rights.  *See Novak v. City of Parma*, 932 F.3d 421, 427 (6th Cir. 2019).  Within this context, the Court must also consider whether Plaintiff's speech was protected and whether West had probable cause to arrest him.  *See id.*

In the usual case, a "plaintiff pressing a retaliatory arrest claim must plead and prove the absence of probable cause for the arrest."  *See Nieves*, 139 S. Ct. at 1724.  However, the Supreme Court has narrowly qualified the probable cause requirement "for circumstances where officers have probable cause to make arrests, but typically exercise their discretion not to do so."  *Id.* at 1727.  In that scenario, a Plaintiff does not need to prove the absence of probable cause in a retaliatory arrest claim.  *Id.* ("[T]he no-probable-cause requirement should not apply when a plaintiff presents objective evidence that he was arrested when otherwise similarly situated individuals not engaged in the same sort of protected speech had not been.").

At this stage of the proceeding, the Court views Plaintiff has having stated sufficient facts for the first two elements of a retaliation claim: his allegations suggest that he (1) was engaged in protected speech and (2) was arrested.  *See Novak*, 932 F.3d at 431 (describing remarks made to a police officer as "protected speech"); *Houston Comm. Coll. Sys. v. Wilson*, 142 S. Ct. 1253, 1260 (2022) ("Some adverse actions may be easy to identify—an arrest, a prosecution, or a dismissal from governmental employment.").

This brings the Court to a consideration of probable cause.  Here, it is true, as discussed above, that West had probable cause to arrest Plaintiff for traffic violations, *see infra* § III.A.1., and that courts generally should not consider the subjective intent of an arresting officer.  *See*

*Nieves*, 139 S. Ct. at 1725. However, on the present record, Plaintiff's retaliation claim presents sufficient facts for the Court to consider that it falls within the "narrow qualification" recognized by the Supreme Court in *Nieves*. *See id.* at 1727.

For instance, the Amended Complaint suggests that discretion is often exercised by officers within the context of writing (or not writing) individuals citations for traffic violations: "Defendant West's attitude then became more aggressive, and he said, 'I wasn't going to write you a ticket, but, since you think it's so crappy, you're getting a ticket.'" [*See* R. 4, p. 3]. And, the Court can imagine scenarios where an officer chooses *not to arrest* an individual for a traffic violation.[3] *See generally Nieves*, 139 S. Ct. at 1727 ("For example, at many intersections, jaywalking is endemic but rarely results in arrest. If an individual who has been vocally complaining about police conduct is arrested for jaywalking at such an intersection, it would seem insufficiently protective of First Amendment rights to dismiss the individual's retaliatory arrest claim on the ground that there was undoubted probable cause for the arrest.").

Thus, the Plaintiff has stated sufficient facts to survive West's Motion to Dismiss on his retaliation claim under the First Amendment. *See Novak*, 932 F.3d at 430-31 ("It is plausible that Novak's arrest under Ohio Rev. Code § 2909.04(B), or one like it, would trigger the exception— i.e., if officers never or rarely arrested someone under this statute."). Therefore, West's Motion to Dismiss will be denied as to this claim.

## IV.    CONCLUSION

For the reasons discussed above,

**IT IS HEREBY ORDERED** as follows:

1.  Defendants' Motion to Dismiss Official Capacity Claims **[R. 7]** is **GRANTED**.

---

[3] Indeed, "Kentucky chooses to preclude arrests" for such activity. *See Gover*, 2018 WL 4518580, at *5.

2. Plaintiff's official capacity claims against West and the Kentucky State Police are **DISMISSED** with prejudice.

3. West's Motion to Dismiss Individual Capacity Claims **[R. 9]** is **GRANTED** in part and **DENIED** in part.

4. Plaintiff's false arrest and malicious prosecution claims fail to state a claim and will be **DISMISSED** with prejudice.

5. Plaintiff's illegal search and seizure and retaliation claims survive review.

This the 27th day of March, 2023.

*Claria Horn Boom*

CLARIA HORN BOOM,
UNITED STATES DISTRICT COURT JUDGE
EASTERN AND WESTERN DISTRICTS OF
KENTUCKY